STATE OF NORTH CAROLINA v. JESSICA SUE FERGUSON

No. COA09-1048

(Filed 15 June 2010)

**1. Evidence— controlled substances—lay opinion testimony—no plain error**

The trial court in a controlled substances case did not commit plain error by allowing a police officer to testify that substances found in a minivan and in defendant's pocketbook were marijuana. The decision in *State v. Llamas-Hernandez*, 363 N.C. 8, did not mandate a new trial in this case and the officer had as much or more training and experience in drug identification as the officer whose testimony was held admissible in *State v. Fletcher*, 92 N.C. App. 50.

**2. Drugs— constructive possession—insufficient evidence— motion to dismiss improperly denied**

The trial court erred in denying defendant's motion to dismiss charges of possession of marijuana where there was insufficient evidence that defendant constructively possessed the bags containing marijuana which were seized from a minivan.

Appeal by Defendant from judgment entered 6 January 2009 by Judge L. Todd Burke in Guilford County Superior Court. Heard in the Court of Appeals 25 January 2010.

*Roy Cooper, Attorney General, by Lars F. Nance, Special Deputy Attorney General, for the State.*

*Faith S. Bushnaq for the Defendant.*

ERVIN, Judge.

Defendant Jessica Sue Ferguson appeals from a judgment entered based on her convictions for possession of marijuana with intent to sell or deliver; felonious possession of marijuana; possession of drug paraphernalia; and resisting, delaying, or obstructing a public officer. For the reasons discussed below, we vacate in part and remand for resentencing in part.

## I. Factual Background

On 7 June 2007, Officer J.B. Smith of the University of North Carolina at Greensboro campus police arrested Defendant on charges of possession of marijuana with the intent to sell or deliver and resisting, delaying, and obstructing an officer. On 22 January 2008, Defendant was indicted for possession of marijuana with the intent to sell or deliver, felonious possession of marijuana, conspiracy to possess marijuana, possession of drug paraphernalia, and resisting, delaying, and obstructing an officer.

The charges against Defendant came on for trial before the trial court and a jury at the 5 January 2009 session of the Guilford County Superior Court. At trial, Officer Smith testified for the State that, on 7 June 2007, he was assigned to detect speeding motor vehicles using radar equipment. As Officer Smith and his partner operated a stationary radar instrument in the West Market Street area of Greensboro, he saw a Honda minivan traveling east on West Market Street at an estimated speed of 47 to 49 miles per hour in a 35 mile per hour zone. When he activated the blue light on his patrol vehicle, the minivan stopped and pulled to the right side of the road, paused briefly and then began to creep forward. Officer Smith and his partner exited their patrol car and walked towards the vehicle. As Officer Smith reached the back of the minivan, the driver looked out of the window and made a gesture suggesting that he was about to get out. After Officer Smith instructed the driver to remain in the minivan, the driver said "Okay, you want me to get back in the car," then shut the door and drove off.

Officer Smith "ran and got back in the patrol car" and "began to go after the minivan." The minivan turned onto "the first road on the right" and drove out of sight. When Officer Smith reached the next corner, he saw the minivan "sitting in the middle of the road" and three adults and a small child running towards a nearby driveway. Law enforcement officers stopped the three adults and placed them in custody, while Officer Smith returned to the minivan. Officer Smith

noticed a "very strong odor" of marijuana emanating from the vehicle, which he testified "wasn't the smell of burnt marijuana," but instead smelled like the "raw smell of unburnt marijuana."

According to Officer Smith, Defendant was one of the three adults that fled from the minivan. The officers determined that the driver of the van, who was not one of the three adults taken into custody at the scene, was the child's father. The officers summoned a tracking dog, but were unable to locate the driver. The other two adults in the van were Mario Jerald and Jacob Stressman. Defendant told Officer Smith that Mr. Jerald was her boyfriend, that they lived at the same address, and that she was unemployed. Mr. Jerald, who was also unemployed, had $1,390 in cash and two cell phones. The third adult, Jacob Stressman, had a "marijuana container" on his keyring.

After the three adults were secured, the officers searched the minivan. Officer Smith testified that, "under the front passenger seat[,] [they] found a black plastic bag containing two bags of marijuana," one of which weighed 28.5 grams and the other of which weighed 16.8 grams. In the glove compartment, the officers found a smaller bag containing 4.9 grams of marijuana. Officer Smith testified that, based on his training and experience, the fact that the marijuana was divided into three bags suggested that it was intended for sale. Officer Smith also testified that Defendant's pocketbook contained "a burnt marijuana cigarette weighing .24 grams," a cell phone, and $200 in cash. Officer Smith testified that he "[didn't] recall" anything about "the way [Defendant] seemed or acted."

On cross-examination, Officer Smith acknowledged that he did not know how long Defendant had been in the minivan before he stopped it and that the officers had lost sight of the vehicle during the chase. When Officer Smith first saw Defendant, she was running away from the minivan, so he did not see her getting in or out of the vehicle. Officer Smith told the jury that, "to the best of [his] knowledge," Defendant had been a back seat passenger and that he understood that the driver jumped out and ran away while the vehicle was still running. Officer Smith agreed that the occupants of the van were "scared and confused" and had cooperated with the officers. He acknowledged that Defendant gave truthful answers to the officers' questions about her name and address. Officer Smith also conceded that Defendant was not the driver or owner of the minivan and that she had no connection to the driver's child. He testified that there was no DNA, fingerprint, or other physical evidence linking Defendant to the bags of marijuana found in the van, that he did not see who put

the marijuana under the car seat, and that he had not seen Defendant making any suspicious gestures. On redirect examination, Officer Smith testified that he had no "opportunity to see anybody stashing anything under a seat or in the glove box."

Officer Smith was the only witness for the State. At the close of the State's evidence, Defendant moved to dismiss the charges against her. Although the trial court dismissed the conspiracy to possess marijuana charge, it denied Defendant's motion with respect to the remaining charges. Defendant did not present any evidence. Following the arguments of counsel and the trial court's instructions, the jury returned verdicts convicting Defendant of possession of marijuana with intent to sell and deliver, felonious possession of marijuana, possession of drug paraphernalia, and resisting, delaying, and obstructing an officer.

At the sentencing hearing, the trial court determined that Defendant should be sentenced as a Level I offender, consolidated all of Defendant's convictions for judgment, sentenced Defendant to a minimum of six months and a maximum of eight months imprisonment in the custody of the North Carolina Department of Correction, suspended Defendant's sentence, and placed Defendant on supervised probation. From this judgment, Defendant noted a timely appeal to this Court.

## II.  Legal Analysis

### A.  Admissibility of Drug Identification Testimony

**[1]** First, Defendant argues that the trial court committed plain error by "allowing opinion testimony that the substance found in the [minivan] and [Defendant's] pocketbook was marijuana." At trial, Officer Smith testified without objection that he searched the minivan and found (1) a bag under the front passenger seat that contained two bags of marijuana; (2) a smaller bag of marijuana in the glove compartment; and (3) a burnt marijuana cigarette in Defendant's pocketbook. On appeal, Defendant acknowledges that she did not object to Officer Smith's testimony that the items in question contained marijuana at trial and argues, for that reason, that the admission of this testimony constituted plain error. *See* N.C. R. App. P. 10(a)(1) (2009) (stating that, "to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make"). We disagree.

In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(a)(4). Since Defendant has assigned as error and argued in her brief that the admission of Officer Smith's testimony identifying the substances found in the bags seized from the minivan and in the cigarette seized from Defendant's pocketbook as marijuana constituted plain error, the prerequisites for plain error review set out in N.C.R. App. P. 10(a)(4) have been met. As a result, the ultimate issue we must confront on appeal is whether admission of Officer Smith's testimony constituted plain error.

"The plain error rule . . . is always to be applied cautiously .and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a 'fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or 'where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' . . . or where the error is such as to 'seriously affect the fairness, integrity or public reputation of judicial proceedings. . . . ' "

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). Thus, we must decide whether the admission of the testimony in question constituted such a "fundamental error" as to "seriously affect the fairness, integrity, or public reputation" of the Defendant's trial.

In *State v. Fletcher*, 92 N.C. App. 50, 56, 373 S.E.2d 681, 685 (1988), this Court addressed the extent to which law enforcement officers were entitled to testify that a particular substance was marijuana. In addressing this issue, the Court first discussed the qualifications of the officers whose testimony was at issue.

At the time of trial, [Officer] Biggerstaff had been a law enforcement officer for almost five years and was a narcotics investigator . . . [with] schooling and on-the-job training in the identification of marijuana. . . . [Captain Townsend] had been a law enforcement officer for sixteen and one-half years and . . . had special training in the identification of drugs.

In concluding that testimony from officers with qualifications similar to those of Officer Biggerstaff and Captain Townsend to the effect that a particular substance was marijuana was admissible, we stated that:

> Expert testimony is properly admissible when it "can assist the jury to draw certain inferences from facts because the expert is better qualified" than the jury to form an opinion on the particular subject. . . . "The test for admissibility is whether the jury can receive 'appreciable help' from the expert witness." Here we believe the two officers, because of their study and experience, were better qualified than the jury to form an opinion as to the contents of the clear plastic bag. The jury received "appreciable help" from the expert testimony and was free to consider the opinions in deciding whether they were convinced the substance was marijuana.

*Fletcher*, 92 N.C. App. at 56-57, 373 S.E.2d at 685-86 (quoting *State v. Bullard*, 312 N.C. 129, 139, 322 S.E.2d 370, 376 (1984), and *State v. Knox*, 78 N.C. App. 493, 495, 337 S.E.2d 154, 156 (1985), and citing N.C. R. Evid. 702).

Although the officers in *Fletcher* testified as experts, our appellate courts have never held that an officer must be tendered as an expert before identifying a particular substance as marijuana. Indeed, in *State v. Moncree*, 188 N.C. App. 221, 655 S.E.2d 464 (2008), this Court held that an SBI agent had testified as an expert witness despite the fact that the State proffered him as a lay witness:

> Agent Pintacuda testified regarding his experience in forensic analysis, his employment at various sheriffs departments, and his extensive training in analyzing physical evidence. . . . Agent Pintacuda's extensive education and training in forensic analysis makes it difficult to imagine how he was able to separate his education, training, and experience while working for the SBI to determine the substance found in defendant's shoe was marijuana based solely on his lay opinion. Therefore, Agent Pintacuda testified as an expert witness concerning the substance found in defendant's shoe

*Moncree*, 188 N.C. App. at 226-27, 655 S.E.2d at 468. Furthermore, if a defendant fails to request that a witness be properly qualified as an expert, "such a finding is deemed implicit in the trial court's admis-

sion of the challenged testimony." *State v. Perry*, 69 N.C. App. 477, 481, 317 S.E.2d 428, 432 (1984) (citing *State v. Hunt*, 305 N.C. 238, 243, 287 S.E.2d 818, 821 (1982)). Finally, "since defendant did not object on the grounds that the testifying witnesses were not qualified as experts, he has waived his right to later make the challenge on appeal." *State v. Aguallo*, 322 N.C. 818, 821-22, 370 S.E.2d 676, 677 (1988).

On appeal, Defendant argues first that the Supreme Court's decision in *State v. Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658 (2009), in which it reversed the decision of this Court in *State v. Llamas-Hernandez*, 189 N.C. App. 640, 659 S.E.2d 79 (2008), on the basis of Judge Steelman's dissent, controls resolution of the present issue and necessitates the granting of a new trial despite our prior decision in *Fletcher*. In essence, Defendant argues that *Llamas-Hernandez* prohibits reliance on the drug identification approach employed by Officer Smith in this case. Aside from the fact that nothing in Judge Steelman's dissent in *Llamas-Hernandez* or our subsequent decision in *State v. Ward*, —— N.C. ——, ——, 681 S.E.2d 354, 370 (2009) (stating that "the identification of marijuana is different in both degree and kind from the identification of prescription medications), casts any doubt on the continued vitality of *Fletcher*, nothing in the plain error jurisprudence of this Court or the Supreme Court suggests that trial judges are required to anticipate changes in law of the type that Defendant contends to have been worked by the Supreme Court's decision in *Llamas-Hernandez*. Thus, we conclude that Defendant's first argument is without merit.

Secondly, Defendant contends that, even if the standards enunciated in *Fletcher* still apply, "the facts of this case are distinguishable" in that "Officer Smith was not similarly qualified to the officers in those cases," he "was [not] offered or accepted as an expert on marijuana identification," and "there is no evidence that he took the substance out of the plastic bag to identify it" or "opened the blunt to ascertain that leaves characteristic of marijuana were inside." However, as we have already noted, it is not necessary, in the absence of an objection, for a witness to be formally tendered or accepted as an expert in order for that witness to be allowed to present expert testimony. *Perry*, 69 N.C. App. at 481, 317 S.E.2d at 432 (stating that a finding that a particular witness is an expert is implicit in the trial court's decision to allow the admission of expert testimony). In addition, the record reflects that Officer Smith had been employed in law enforcement for eight years and had received drug interdiction train-

ing from the State Highway Patrol, the Drug Enforcement Agency, and the Bureau of Alcohol, Tobacco, and Firearms, during which he had received instruction in the identification of marijuana. As a result, the evidence in this case suggests that Officer Smith had at least as much, if not more, training and experience in drug identification than one of the officers whose testimony was held admissible in *Fletcher*. Finally, Defendant's argument concerning the lack of evidence about the extent to which Officer Smith opened the containers in which the marijuana was found and the extent to which he based his opinions on the substances' odor goes to the weight to be given to his testimony rather than its admissibility. *Fletcher*, 92 N.C. at 57, 373 S.E.2d at 686 (stating that absence of chemical testing goes to weight of officer's testimony rather than its admissibility); *State v. Sanderson*, 60 N.C. App. 604, 607, 300 S.E.2d 119 (1983) (stating that any doubts about the certainty with which the witness identified certain plants as marijuana went to weight rather than admissibility of the testimony). As a result, we conclude that the trial court did not err, much less commit plain error, in allowing the admission of Officer Smith's testimony to the effect that the substances found in the bags seized from the minivan and the cigarette found in Defendant's pocketbook were marijuana.

### B. Sufficiency of the Evidence

**[2]** Secondly, Defendant argues that the trial court erred by denying her motion to dismiss the charges of possession of marijuana with the intent to sell or deliver and felonious possession of marijuana on the grounds that the record did not contain sufficient evidence that she actually or constructively possessed the bags seized from the minivan that contained marijuana. We agree.

"When a defendant moves to dismiss a charge against him on the ground of insufficiency of the evidence, the trial court must determine 'whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004) (quoting *State v. Crawford*, 344 N.C. 65, 73, 472 S.E.2d 920, 925 (1996)), *cert. denied*, 543 U.S. 1156, 161 L. Ed. 2d 122 (2005). " 'Substantial evidence' is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citing *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), and *State v. Vick*, 341 N.C. 569, 583-84, 461 S.E.2d 655, 663 (1995)).

STATE v. FERGUSON

[204 N.C. App. 451 (2010)]

According to N.C. Gen. Stat. § 90-95(d)(4), possession of more than one and a half ounces of a Schedule VI[1] controlled substance is punishable as a Class I felony. As a result, a conviction for felonious possession of marijuana requires proof "that defendant was in possession of more than one and one-half ounces (or approximately 42 grams) of marijuana." *State v. Partridge*, 157 N.C. App. 568, 571, 579 S.E.2d 398, 399-400 (2003) (citing *State v. Gooch*, 307 N.C. 253, 256, 297 S.E.2d 599, 601 (1982)). Similarly, N.C. Gen. Stat. § 90-95(a) makes it "unlawful for any person: (1) [t]o manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." To obtain a conviction for possession of marijuana with the intent to sell or deliver, "the State is required to prove two elements: (1) defendant's possession of the drug and (2) defendant's intention to 'sell or deliver" the drug." *State v. Creason*, 313 N.C. 122, 129, 326 S.E.2d 24, 28 (1985). Thus, possession of marijuana is an element of both felonious possession of marijuana and possession of marijuana with the intent to sell or deliver.

"Possession of a controlled substance may be actual or constructive. 'A person has actual possession of a substance if it is on his person, he is aware of its presence, and either by himself or together with others he has the power and intent to control its disposition or use.' " *State v. Steele*, —— N.C. App. ——, ——, 689 S.E.2d 155, 158 (2010) (citing *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987), and quoting *State v. Reid*, 151 N.C. App. 420, 428-29, 566 S.E.2d 186, 192 (2002)). In this case, the fact that Defendant did not actually possess the bags of marijuana in the minivan is not in dispute. As a result, the only basis upon which the Defendant could have possessed the marijuana in the bags seized from the minivan would be under a constructive possession theory.

"A person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing." *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986) (citing *State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 374 (1983)). "Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citing *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001)). As a general rule, " 'mere

---

1. Marijuana is classified as a Schedule VI controlled substance. N.C. Gen. Stat. § 90-94(1).

proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession.' " *State v. Weems*, 31 N.C. App. 569, 570, 230 S.E.2d 193, 194 (1976) (citations omitted). Accordingly, "the mere presence of the defendant in an automobile in which illicit drugs are found does not, without more, constitute sufficient proof of his possession of such drugs." *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 194.

"Our cases addressing constructive possession have tended to turn on the specific facts presented." *Miller*, 363 N.C. at 99, 678 S.E.2d at 594. "North Carolina courts have cited a variety of factors that may be used in conjunction with the defendant's presence near the seized contraband to support a finding of constructive possession." *State v. Fortney*, —— N.C. App. ——, ——, 687 S.E.2d 518, 523 (2010). "[C]onstructive possession depends on the totality of circumstances in each case," so that "[n]o single factor controls." *State v. James*, 81 N.C. App. 91, 93, 344 S.E.2d 77, 79 (1986) (citing *State v. Baize*, 71 N.C. App. 521, 323 S.E.2d 36 (1984), *disc. rev. denied*, 313 N.C. 174, 326 S.E.2d 34 (1985)). However, our review of the relevant decisions reveals that the cases finding sufficient proof of constructive possession frequently include evidence of one or more of the following:

First, constructive possession cases often include evidence that the defendant had a specific or unique connection to the place where the drugs were found. *See e.g., State v. Butler*, 356 N.C. 141, 144, 567 S.E.2d 137, 139 (2002) (drugs found in taxicab near defendant's seat; driver told officers he "cleaned and vacuumed the cab prior to beginning his shift," that "defendant was his first fare of the morning," and that "cocaine had not been under the driver's seat when defendant entered the cab"); *Fortney*, —— N.C. App. at ——, 687 S.E.2d at 523 (2010) (defendant driving motorcycle; drugs found in bag attached to motorcycle handlebars; bag also held firearm, drug paraphernalia, and cell phone charger that matched defendant's cell phone); *State v. Baublitz*, 172 N.C. App. 801, 616 S.E.2d 615 (2005) (defendant driver of vehicle where drugs found); *State v. Boyd*, 154 N.C. App. 302, 307, 572 S.E.2d 192, 196 (2002) (State presented evidence that "defendant was the only person who could have placed the drugs where they were found").

Secondly, many constructive possession cases involve evidence that the defendant behaved suspiciously, made incriminating statements admitting involvement with drugs, or failed to cooperate with law enforcement officers. *See e.g., State v. McNeil*, 359 N.C. 800, 801-02, 617 S.E.2d 271, 272-73 (2005) (defendant acted nervous,

STATE v. FERGUSON

[204 N.C. App. 451 (2010)]

ran from police, and admitted possession of some of the drugs that police found); *Butler*, 356 N.C. at 143, 567 S.E.2d at 139 (officer described defendant as " 'very nervous' and 'fidgety' and noted "defendant was 'very slow' to exit the vehicle" and "bent down and reached toward the driver's seat [where drugs later found] prior to opening the door"); *Steele*, —— N.C. App. at ——, 689 S.E.2d at 159 ("defendant fled when approached by police"; cocaine found "a few feet from where defendant was apprehended in the woods"; defendant "admitted that the cocaine found was his"); *State v. Turner*, 168 N.C. App. 152, 156, 607 S.E.2d 19, 22 (2005) (defendant "sitting next to a wadded-up blanket beneath which the drugs were concealed" and "appeared agitated"; defendant's "hands were 'jumbling' around 'nervously' and defendant and co-defendant "appeared to be passing the [drugs] back and forth underneath the blanket"); *Boyd*, 154 N.C. App. at 307, 572 S.E.2d at 196 (defendant "behaved suspiciously upon being stopped by the police, reaching under the seat of the car, moving about, and making it difficult for the police to search him").

Finally, constructive possession is often based, at least in part, on other incriminating evidence in addition to the fact that drugs were found near the defendant. *See e.g.*, *McNeil*, 359 N.C. at 801, 617 S.E.2d at 272 (police received complaint about drugs being sold in front of address where defendant was found); *State v. Wiggins*, 185 N.C. App. 376, 388, 648 S.E.2d 865, 873 (2007) (defendant's motel room visited by "known drug seller and user"); *State v. Martinez*, 150 N.C. App. 364, 371, 562 S.E.2d 914, 918 (2002) (drugs found in trunk of car in which defendant was passenger; witness testified to "planned drug transaction"; driver testified defendant paid him "to be his courier to and from [witness's] house"; "officers independently corroborated and verified everything that [witness] had reported to them about the drug transaction in process").

In this case, Officer Smith testified that he saw a minivan exceeding the speed limit, signaled the van to stop, and directed the driver to remain inside. Instead of complying with Officer Smith's instruction, the driver drove off around a corner out of the officer's sight. After following the minivan, Officer Smith found it sitting in the middle of a nearby street in drive with the engine running. The driver had fled; efforts to locate him proved unsuccessful. Three adults and a small child were running from the minivan towards a nearby house. The driver was the child's father; Defendant had no relationship to the child. After law enforcement officers placed the adults in custody, they searched the van. Underneath the front passenger seat, Officer

Smith found a large bag containing two smaller bags of marijuana. In the glove box, Officer Smith found a small bag of marijuana. In Defendant's handbag, Officer Smith found a burned marijuana cigarette weighing .24 grams. Officer Smith understood that Defendant had been a back seat passenger. We conclude that this evidence is insufficient to show Defendant's constructive possession of the marijuana found in the bags seized inside the minivan.

Although "constructive possession depends on the totality of circumstances in each case," *James*, 81 N.C. App. at 93, 344 S.E.2d at 79, so that the presence or absence of evidence of a given circumstance is not dispositive, the record contains no evidence such as that typically found in cases where the evidence has been found sufficient to support a finding of constructive possession. For example, Defendant was neither the owner nor the driver of the van. Thus, there was no evidence that Defendant had a particular connection to the place where the marijuana was found, making this case distinguishable from decisions such as *Miller*, 363 N.C. at 100, 678 S.E.2d at 294 (evidence sufficient to support a finding of constructive possession where defendant was present in a room of the house where two of defendant's children and their mother lived, in which a "rock" of cocaine was in "plain view" on the bed where defendant had been sitting, a bag of cocaine was behind a door within a few feet of where defendant had been sitting, and defendant's state-issued identification card and birth certificate were on a table in the room). Furthermore, there was no evidence that Defendant behaved suspiciously or failed to cooperate with investigating officers after being taken into custody,[2] unlike the defendant in *State v. Autry*, 101 N.C. App. 245, 399 S.E.2d 357 (1991) (evidence sufficient to support a finding of constructive possession where defendant was present in a room in which a pistol, $47 in cash, and four packages of cocaine were situated on a table surrounded by four chairs and asked if he could retrieve his jacket from one of the four chairs and get his money). According to Officer Smith, Defendant did what he told her to do and truthfully answered his questions about her identity. Finally, the record contains no evidence that Defendant made any incriminating admissions, had a relationship with the minivan's owner, had a history of selling drugs, or possessed an unusually large

2. Given the driver's decision to flee from the initial traffic stop and to abandon the minivan while it was still in motion and given the fact that Defendant had a marijuana cigarette in her pocketbook, the fact that the remaining passengers, including Defendant, ran from the minivan does not, without more, support an inference that Defendant possessed the marijuana bags seized from the minivan.

amount of cash. Thus, the record lacks any of the facts which usually support a finding of constructive possession.

The State responds to Defendant's challenge to the sufficiency of the evidence to support a finding that she constructively possessed the bags of marijuana found in the minivan by pointing to evidence that the van's <u>driver</u> sped away when law enforcement officers told him to stop, left the car in drive, fled on foot, and abandoned his young child. The State does not, however, cite any authority tending to suggest that the driver's behavior should be utilized to support an inference that Defendant constructively possessed the marijuana in question, particularly given the absence of any evidence tending to show the existence of a relationship between Defendant and the driver. In addition, the State argues that the bag seized from under the front passenger seat was located at the rear of the seat as if it had been put there by a rear seat passenger. However, while the record does contain evidence suggesting that Defendant had been riding in the back seat of the minivan, it is devoid of any indication that she was in a position to put an object in the location where the bag of marijuana was discovered. The State also points to the fact that Defendant was unemployed and had $200 and a pre-paid cell phone from which numbers could not be traced in her possession; however, the record contains no evidence tending to show a connection between the possession of such pre-paid cell phones and larger quantities of marijuana.[3] Furthermore, the State introduced no evidence and cites no authority suggesting that Defendant's possession of $200.00 while unemployed tends to show that she exercised dominion and control over the bags of marijuana found in the minivan. Finally, the State argues that evidence showed that another passenger, who was identified as Defendant's boyfriend, had a large amount of cash and two cell phones in his possession, but once again fails to explain how this evidence tends to show that <u>Defendant</u> constructively possessed the bags of marijuana found in the minivan. As a result, we do not find any of the arguments advanced by the State in support of the trial court's decision to deny Defendant's dismissal motions persuasive. Thus, we conclude that the State presented insufficient evidence of Defendant's constructive possession of the bags of marijuana in the van.

The decisions of this Court and the Supreme Court fully support our conclusion. For example, in *State v. Richardson*, —— N.C.

---

3. The trial court sustained Defendant's objection to the prosecutorial questions inquiring about the use of cell phones by individuals involved in the drug trade.

App. ——, 689 S.E.2d 188 (2010), law enforcement officers executed a search warrant at a private residence in the defendant's neighborhood. When the officers entered the house, defendant and several other men ran out the back door and were apprehended in the back yard. Officers found a "plastic [baggie] containing a 9.4-gram crack rock on the ground near defendant." Although the baggie was "about two feet from defendant's feet," the "other men who had been detained were the same distance from defendant." An officer searched defendant and "found no weapons or contraband" but did find over $1000.00 in cash in defendant's pocket. Defendant lived in the neighborhood and law enforcement officers had seen him in the vicinity of the house. This Court held that the evidence was insufficient to show Defendant's constructive possession of the cocaine found in the yard and other items seized from the house, noting that "there [were] no indicia of defendant's control over the place where the contraband was found." *Richardson*, —— N.C. App. at ——, 689 S.E.2d at 191.

Similarly, in *State v. Chavis*, 270 N.C. 306, 154 S.E.2d 340 (1967), law enforcement officers lost sight of the defendant for a few seconds while following him on foot. Shortly thereafter, the officers found drugs in a hat that had been left in a vacant lot through which defendant had walked. The Supreme Court stated that:

> The State's case rests primarily upon evidence . . . [that] the hat in and on which the . . . marijuana [was] found was the identical hat defendant was wearing when he . . . passed in front of [the officers]. . . . There is no evidence that either officer observed defendant make any disposition of the hat . . . There was no evidence the marijuana was in a hat while defendant was wearing it. Nor was there evidence the marijuana was put in the hat . . . at defendant's direction. . . . [T]he evidence, in our opinion, falls short of being sufficient to support a finding that the marijuana found by the officers in and on [the] hat . . . was in the possession of defendant when he was first observed and followed by the officers.

*Chavis*, 270 N.C. at 310-11, 154 S.E.2d at 344.

Finally, in *State v. Acolatse*, 158 N.C. App. 485, 581 S.E.2d 807 (2003), the defendant parked near a car that law enforcement officers had under surveillance. When officers approached defendant, he ran behind the nearest house. An officer pursued defendant, but "lost sight of [him] for approximately ten seconds." Another officer saw defendant make a "throwing motion" towards some bushes, but no

drugs were found there. Defendant was apprehended in the back yard, where cocaine was discovered on the roof of a garage. Defendant was in possession of three cell phones and $830.00 in cash and his car smelled of cocaine. However, there were no finger-prints on the bags of cocaine and no drugs in defendant's car. This Court held:

> [T]he cocaine . . . [was] on the roof of a detached garage in the backyard of a residence. The defendant did not own the residence. . . . The State contends the evidence placing the defendant in close juxtaposition to the cocaine, the money ($830.00) found on defendant's person . . . and the defendant's throwing motion are sufficient incriminating circumstances from which one can infer constructive possession. We disagree.

> . . .

> At trial, the State contended the cocaine odor in the defendant's vehicle combined with the belief that during the few seconds the defendant was out of the detectives' view, [he] had enough time to throw the drugs onto the roof was enough to establish possession. However, *Chavis* dictates that this evidence only raises a suspicion of possession. . . . [U]nder our Supreme Court's decision in *Chavis* . . . the State has failed to present any incriminating circumstances from which one can infer constructive possession.

*Acolatse*, 158 N.C. App. at 488-89, 490, 581 S.E.2d 16 310-11. Thus, these decisions indicate that our conclusion that the State failed to present sufficient evidence that Defendant constructively possessed the bags of marijuana found in the minivan is fully consistent with the prior decisions of this Court and the Supreme Court.

The sole basis for Defendant's argument in support of her dismissal motion at trial and on appeal was that the evidence did not support a finding that she actually or constructively possessed the marijuana found in the bags in the minivan. Since Defendant could not have been convicted of possession of marijuana with the intent to sell or deliver in the absence of a finding that she possessed the marijuana in the bags found in the minivan, both because that was the only marijuana available for sale or delivery to others and because the only evidence tending to show an intent to sell or deliver was Officer Smith's testimony that packaging marijuana in smaller bags indicated an intent to sell or deliver, our determination that the evi-

dence did not support a finding that Defendant possessed the marijuana in these bags requires us to vacate Defendant's conviction for possession of marijuana with the intent to sell or deliver. In addition, attributing the amount of marijuana contained in the bags found under the front passenger seat and in the glove compartment of the minivan was essential to the jury's ability to convict Defendant of felonious possession of marijuana.

However, Defendant has not denied possessing the marijuana cigarette found in her pocketbook. The trial court submitted the issue of Defendant's guilt of simple possession of marijuana in violation of N.C. Gen. Stat. § 90-95(d)(4) to the jury based on this evidence. As a result, we conclude that, given our holding that the evidence was insufficient to support a finding that Defendant possessed the bags of marijuana found in the minivan, we must vacate Defendant's conviction for felonious possession of marijuana and remand this case to the trial court so that Defendant can be resentenced based upon a conviction for violating N.C. Gen. Stat. § 90-95(d)(4). *See Gooch*, 307 N.C. at 258, 297 S.E.2d at 602 (vacating conviction of possession of more than an ounce of marijuana but remanding for resentencing "as upon a verdict of guilty of simple possession of marijuana") (citing *State v. Barnette*, 304 N.C. 447, 468-70, 284 S.E.2d 298, 311 (1981); and *State v. Jolly*, 297 N.C. 121, 130, 254 S.E.2d 1, 7 (1979)).

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that Defendant's conviction for possession of marijuana with the intent to sell or deliver should be vacated and that her conviction for felonious possession of marijuana should be vacated and the case be remanded for sentencing for simple possession of marijuana in violation of N.C. Gen. Stat. § 90-95(d)(4). In addition, despite the fact that we leave Defendant's convictions for possession of drug paraphernalia and resisting, delaying, and obstructing an officer undisturbed, the fact that the trial court consolidated all of Defendant's convictions for sentencing requires that Defendant's convictions for possession of drug paraphernalia and resisting, delaying, and obstructing an officer be remanded for resentencing as well.

Possession of marijuana with the intent to sell or deliver: Vacated.

Felonious possession of marijuana: Vacated and remanded for sentencing on simple possession of marijuana.

Possession of drug paraphernalia: Remanded for resentencing.

Resisting, delaying, and obstructing an officer: Remanded for resentencing.

Chief Judge MARTIN and Judge ROBERT C. HUNTER concur.