IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-163

No. COA20-873

Filed 15 March 2022

Moore County, No. 18 CRS 52027; 19 CRS 52656

STATE OF NORTH CAROLINA

      v.

CONNOR ORION BRADLEY, Defendant.

Appeal by Defendant from judgments entered 29 July 2020 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 7 September 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Ebony J. Pittman, for the State.*
>
> *Stephen G. Driggers, for Defendant-Appellant.*

WOOD, Judge.

¶ 1      Defendant Connor Orion Bradley ("Defendant") appeals two judgments revoking his probation. On appeal, Defendant argues the trial court erred by revoking his probation based on the findings he (1) possessed Schedule II and Schedule IV controlled substances and (2) maintained a place for a controlled substance. For the reasons stated herein, we affirm the trial court's revocation of Defendant's probation.

## I.    Factual and Procedural Background

On September 5, 2019, Defendant entered a guilty plea to one count of indecent liberties with a child in 18 CRS 052027. The trial court sentenced Defendant to a term of 16 to 29 months in confinement, suspended the sentence, and placed Defendant on 30 months of supervised probation.

On September 30, 2019, Defendant's probation officer, Ilissa Epps, filed a probation violation report. In the report, Epps attested under oath

> 1. The Defendant committed the offense of driving while his . . . license was revoked . . . . The Defendant also committed the criminal offenses of driving a vehicle with no registration, no inspection, and [fictitious title / registration card and tag] . . . .
>
> 2. The Defendant committed the criminal offense of failure to register his address within 3 business days of change of address. . . . This is in violation of . . . [N.C. Gen. Stat. §] 14-208.9(A).

On November 6, 2019, Defendant entered another guilty plea to one count of failing to register his new address as a sex-offender in file number 19 CRS 052656. That same day, the trial court entered an order finding Defendant had violated the terms and conditions of his probation as set out in the violation report. Defendant was sentenced to an intermediate punishment of 38 days in prison and was given credit for 38 days served. Also, on November 6, 2019, the trial court entered judgment against Defendant sentencing him to 17 to 30 months in confinement. The trial court suspended this sentence and placed Defendant on 30 months of supervised probation

under the same conditions set forth in 18 CRS 052027.

¶ 5    After Defendant was placed on probation for failure to register his address as a sex offender, he submitted to a risk assessment. The risk assessment found Defendant to be a "high risk offender." As a result, the Division of Community Corrections amended the conditions of Defendant's probation by requiring he submit to a curfew and wear an electronic monitoring device.

¶ 6    Less than five months after Defendant's probation began, Epps once again filed a probation violation report in each case. The violation report for 18 CRS 052027 alleged Defendant had 1) failed to pay any money since being placed on probation, 2) failed to pay any supervision fees since being placed on probation, and 3) committed the criminal offense of possession with the intent to deliver a schedule IV controlled substance, maintaining a place for a controlled substance, simple possession of a scheduled II controlled substance, and simple possession of a schedule IV controlled substance. The violation report for 19 CRS 052656 alleged Defendant 1) failed to pay any money since being placed on probation and 2) committed the criminal offense of possession with the intent to deliver a schedule IV controlled substance, maintaining a place for a controlled substance, simple possession of a scheduled II controlled substance, and simple possession of a schedule IV controlled substance.

¶ 7    The trial court held a hearing on these violation reports on July 29, 2020. At the hearing, Defendant denied he had "knowingly and willfully and without legal

justification violated the terms and conditions of his probation."

¶ 8        The State presented evidence which tended to show the following:  On March 19, 2020, Amanda Gooch ("Gooch") was driving her grandmother's vehicle in which Defendant was a passenger in the front passenger seat.  While driving, Gooch was pulled over by Officer McKenzie for careless and reckless driving.  Officer McKenzie then conducted a traffic stop during which time Corporal Faulk and Officer Lucas arrived.  Corporal Faulk walked up to the vehicle, retrieved Gooch's driver's license, and ran the vehicle's registration.  Upon observing Defendant to be moving excessively in the passenger seat while the traffic stop was ongoing, Officer Lucas pulled Defendant out of the vehicle.  The officers next asked Gooch and Defendant for permission to search the vehicle but were denied consent.

¶ 9        An officer then shined his flashlight into the vehicle's passenger side and observed a plastic container with marijuana on the floorboard.  A search of the vehicle ensued.  The officers additionally discovered Alprazolam (Xanax) and Oxycodone inside the glove box and Clonazepam, a glass marijuana pipe, and one Cigarillo in the center console.  Defendant denied owning any of these substances and alleged the substances belonged to Gooch.  Gooch at first claimed all the substances belonged to herself; then claimed the substances belonged to nobody; and thereafter claimed half of the substances belonged to herself and the other half belonged to Defendant.

¶ 10        Defendant remained outside of the vehicle while the search was conducted.

Corporal Faulk testified that during the search Defendant appeared "unsteady on his feet" and was "falling in and out." Due to Defendant's appearance and conduct, the officers called Emergency Medical Services to treat Defendant. Defendant refused medical treatment; and, furthermore, at no point was a blood test performed on Defendant to determine what substance, if any, caused Defendant's appearance of impairment.

¶ 11    After conducting a hearing on the probation violations, the trial court revoked Defendant's probation for 18 CRS 052027 and 19 CRS 052656 by written judgments entered July 29, 2020. Defendant gave oral notice of appeal in open court at the hearing.

## II.    Discussion

¶ 12    In North Carolina, a court may revoke a defendant's probation when the defendant commits a criminal offense in any jurisdiction in violation of N.C. Gen. Stat. § 15A-1343(b)(1); violates a condition of his probation when the defendant has previously "received a total of two periods of confinement" under N.C. Gen. Stat. § 15A-1344(d2) (2021); or "absconds by willfully avoiding supervision or willfully making the defendant's whereabouts unknown to the supervising probation officer" in violation of N.C. Gen. Stat. § 15A-1343(b)(3a) (2021). N.C. Gen. Stat. § 15A-1344(a) (2021). Upon revocation of probation, the sentence the defendant "may be required to serve is the punishment for the crime of which he had previously been found

guilty." *State v. Hewett*, 270 N.C. 348, 352, 154 S.E.2d 476, 479 (1967) *rev'd on other grounds*, *Hewett v. North Carolina*, 415 F.2d 1316 (1969).

¶ 13    In reviewing a trial court's decision to revoke a defendant's probation, we review for abuse of discretion. *State v. Murchison*, 367 N.C. 461, 464, 758 S.E.2d 356, 358 (2014). An abuse of discretion occurs when "a ruling 'is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" *State v. Maness*, 363 N.C. 261, 279, 677 S.E.2d 796, 808 (2009) (quoting *State v. Peterson*, 361 N.C. 587, 602, 652 S.E.2d 216, 227 (2007)). Generally, "when judgment is suspended in a criminal action upon good behavior or other conditions, the proceedings to ascertain whether or not the conditions have been violated are addressed to the sound discretion of the judge . . . ." *State v. Guffey*, 253 N.C. 43, 45, 116 S.E.2d 148, 150 (1960).

¶ 14    Although Defendant would have us find "substantial evidence" is the standard for evidence in a probation hearing, our Supreme Court established in *State v. Guffey* the evidentiary standard in a probation hearing is "competent evidence." *Id.*, 253 N.C. at 45, 116 S.E.2d at 150 (citations omitted); *see Hewett*, 270 N.C. at 353, 154 S.E.2d at 480 ("[T]he alleged violation of a valid condition of probation need not be proven beyond a reasonable doubt."). Competent evidence is evidence that is admissible or otherwise relevant. *Competent Evidence* BLACK'S LAW DICTIONARY (7th ed. 1999)).

## A. Competent Evidence to Support a Judgment of Simple Possession

¶ 15 Defendant first contends the evidence was insufficient for the trial court to find he possessed Oxycodone, Xanax, and Clonazepam. We disagree.

¶ 16 "Possession of any item may be actual or constructive." *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998), *superseded by statute on other grounds,* Act of Aug. 12, 2004, ch. 186, 2004 N.C. Sess. Laws 186; *see State v. Perry*, 316 N.C. 87, 96, 340 S.E.2d 450, 456 (1986) (stating when a defendant is prosecuted for contraband "the prosecution is not required to prove actual physical possession of the materials[,]" rather, "[p]roof of constructive possession is sufficient and that possession need not always be exclusive" ); *see also See State v. Harvey*, 281 N.C. 1, 187 S.E.2d 706 (1972); *State v. Fuqua*, 234 N.C. 168, 66 S.E.2d 667 (1951). Actual possession occurs when the party has "physical or personal custody of the item." *Alston*, 131 N.C App. at 519, 508 S.E.2d at 318. Constructive possession occurs when the accused "has both the power and intent to control its disposition or use." *Harvey*, 281 N.C. at 12, 187 S.E.2d at 714 (1972); s*ee Alston*, 131 N.C. App. at 519, 508 S.E.2d at 318. Circumstances which are sufficient to support a finding of constructive possession include "close proximity to the controlled substance and conduct indicating an awareness of the drugs, such as efforts at concealment or behavior suggesting a fear of discovery . . . ." *State v. Turner*, 168 N.C. App. 152, 156, 607 S.E.2d 19, 22-23 (2005).

¶ 17        In *State v. Turner*, our Supreme Court held there was sufficient evidence for constructive possession when the defendant appeared agitated and nervous, his hands were jumbling around, and he appeared to be passing a tube back and forth underneath a blanket. *Id.* The tube was discovered to contain cocaine and though the defendant denied possession of the tube and did not have exclusive control over the premises, our Supreme Court held that a totality of the circumstances constituted "sufficient evidence of constructive possession of cocaine." *Id.* at 154-57, 607 S.E.2d at 21-23.

¶ 18        Here, the trial court found Defendant was in simple possession of Oxycodone, Xanax, and Clonazepam from the evidence presented at the hearing. The State's evidence tended to show Gooch was pulled over for careless and reckless driving and Defendant was seated in the passenger side of the vehicle. While Officer McKenzie was conducting the traffic stop, Defendant, like the defendant in *Turner*, exhibited behavior suggesting his fear of discovery of the drugs therein because he continued to move "a lot . . . in the passenger side." Indeed, Defendant's movement was to the extent that Corporal Faulk ultimately had to remove Defendant from the vehicle. A search ensued when an officer observed marijuana in a clear container on the floorboard of the passenger side. The fruits of this search showed Defendant was in "close proximity to the controlled substance" as a pill bottle containing Xanax, Oxycodone, and Clonazepam was found inside the glove box located *directly in front*

of the passenger's seat. *Id.* at 156, 607 S.E.2d at 22.

¶ 19 In addition to Defendant being in "close proximity to the controlled substance" and exhibiting "behavior suggesting a fear of discovery[,]" Defendant also showed obvious signs of impairment. *Id.* at 156, 607 S.E.2d at 22-23. Corporal Faulk stated Defendant was "unsteady on his feet" and "falling in and out" while standing outside of the vehicle. Due to concerns for Defendant because of the signs of obvious impairment, Emergency Medical Services were called "to come check him out[] [and] make sure he did not need to go to the hospital." Notably, most of the State's evidence was admitted by the trial court without objection from Defendant.

¶ 20 In light of the evidence presented by the State, we find competent evidence existed to support the trial court's finding of simple possession of a controlled substance. As such, the trial court's activation of Defendant's previously suspended sentences "are not reviewable on appeal, unless there is a manifest abuse of discretion." *Guffey*, 253 N.C. at 45, 116 S.E.2d at 150; *see Pelley*, 221 N.C. 487, 500, 20 S.E.2d 850, 858 (1942). There is no evidence of abuse of discretion by the trial court in this proceeding. We therefore hold the trial court did not err by revoking Defendant's probation based upon its finding that Defendant committed the offense of simple possession of Oxycodone, Xanax, and Clonazepam while on probation.

¶ 21 While our dissenting colleague correctly identifies that a finding of constructive possession requires more than a defendant merely being present within

a vehicle in which drugs are found, *State v. Ferguson*, 204 N.C. App. 451, 459-60, 694 S.E.2d 470, 477 (2010), other incriminating circumstances existed in the case *sub judice* to support the trial court's finding that Defendant violated the terms of his probations by committing the offenses of possessing a schedule II and IV substance. *See id.* ("As a general rule, mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession." (internal quotation marks omitted)).

**B. Competent Evidence of Maintaining a Vehicle for Sale of a Controlled Substance**

¶ 22    Defendant next argues there was no substantial evidence to support the trial court's finding Defendant willfully maintained a vehicle for the sale of a controlled substance. We agree, but hold this error was not prejudicial.

¶ 23    Section 90-108(a)(7) of our general statutes states, in relevant parts,

> [i]t shall be unlawful for any person . . . [t]o knowingly keep or maintain any . . . vehicle . . . which is resorted to by persons using controlled substances . . . for the purpose of using such substances, or which is used for the keeping or selling of the same . . . .

¶ 24    N.C. Gen. Stat. § 90-108(a)(7) (2021). The word "keep" in Section 90-108(a)(7) "refers to possessing something for at least a short period of time—or intending to retain possession of something in the future—for a certain use." *State v. Rogers*, 371 N.C. 397, 402, 817 S.E.2d 150, 154 (2018). When determining if a defendant kept a

vehicle, the "focus of the inquiry is on the *use*, not the contents, of the vehicle." *State v. Mitchell*, 336 N.C. 22, 34, 442 S.E.2d 24, 30 (1994), *overruled in part by State v. Rogers*, 371 N.C. 397, 817 S.E.2d 150 (2018). "Maintain" as used in Section 90-108(a)(7) means to "bear the expense of; carry on . . . hold or keep in an existing state or condition." *State v. Allen*, 102 N.C. App. 598, 608, 403 S.E.2d 907, 913 (1991) (quoting Black's Law Dictionary 859 (5th ed. 1979))*, rev'd on other grounds,* 332 N.C. 123, 418 S.E.2d 225 (1992).

¶ 25        Although the definitions of "keep" and "maintain" differ, "they do not describe separate offenses[] . . . [and are] often used interchangeably . . . ." *State v. Weldy*, 271 N.C. App. 788, 791, 844 S.E.2d 357, 361 (2020). When deciding if a defendant violated Section 90-108(a)(7), this court looks to circumstances such as "defendant's use of the vehicle, title to or ownership of the vehicle, property interest in the vehicle, payment toward the purchase of the vehicle, and payment for repairs to or maintenance of the vehicle." *Id.*; *see also State v. Alvarez*, 260 N.C. App. 571, 575, 818 S.E.2d 178, 182 (2018).

¶ 26        In this case, the violation reports purported, amongst other allegations, Defendant had committed the criminal offense of "maintaining a place for a controlled substance." At the hearing, Corporal Faulk's testimony tended to show Gooch was pulled over for careless and reckless driving, Defendant was merely Gooch's passenger, and that the vehicle belonged to neither Gooch nor Defendant, but rather

belonged to Gooch's grandmother. The State presented no competent evidence that Defendant possessed any ownership interest in the vehicle, paid for any expenses in connection with the vehicle, or used the vehicle aside from this instance where he was a passenger. Accordingly, no evidence supports the trial court's finding Defendant violated a condition of his probation by "maintaining a place for a controlled substance."

¶ 27    However, the absence of competent evidence to support the trial court's finding Defendant maintained a place for a controlled substance does not necessarily mean the trial court abused its discretion by revoking Defendant's probation. The plain text of N.C. Gen. Stat. § 15A-1343 states the "defendant must[] [c]ommit no criminal offense." N.C. Gen. Stat. § 15A-1343(b)(1) (2021). The word "offense" in Section 15A-1343 is singular, denoting a singular new criminal offense is sufficient to revoke probation. *See* N.C. Gen. Stat. § 15A-1344(a) (2021); *see also State v. Coltrane*, 307 N.C. 511, 516, 299 S.E.2d 199, 202 (1983) ("The evidence in a probation revocation hearing must satisfy the court that defendant has willfully or without lawful excuse violated a condition of probation." (emphasis omitted)).

¶ 28    The trial court is not required under the language of N.C. Gen. Stat. § 15A-1344(a) and N.C. Gen. Stat. § 15A-1343(b)(1) to find more than one new criminal offense exists in order to revoke a defendant's probation. Here, the trial court found Defendant committed multiple probation violations. In its judgment revoking

Defendant's probation for 18 CRS 052027, the trial court found Defendant violated his probation by failing to pay any money since being placed on probation; failing to pay any supervision fees; possessing with the intent to deliver a schedule IV substance; maintaining a place for a controlled substance; and simple possession of a schedule II and IV substance. Likewise, in its judgment revoking Defendant's probation for 19 CRS 052656, the trial court found Defendant violated his probation by failing to pay any money since being placed on probation; possessing with the intent to deliver a schedule IV substance; maintaining a place for a controlled substance; and simple possession of a schedule II and IV substance.

¶ 29        As discussed *supra*, sufficient competent evidence existed to support the trial court's finding that Defendant committed the criminal offense of simple possession of a controlled substance. Thus, despite the lack of competent evidence that Defendant maintained a vehicle for sale of a controlled substance, the trial court did not abuse its discretion by revoking Defendant's probation and activating his suspended sentences.

## III.    Conclusion

¶ 30        After a careful review of the record and applicable law, we hold the trial court did not abuse its discretion by revoking Defendant's probation and activating his sentences. Accordingly, the judgments of the trial court are affirmed.

AFFIRMED.

Judge GORE concurs.

Judge HAMPSON dissents by separate opinion.

HAMPSON, Judge, dissenting.

¶ 31    The majority correctly concludes no evidence supports the trial court's Finding Defendant violated a condition of his probation by "maintaining a place for a controlled substance." However, the evidence in this case is also insufficient to establish Defendant violated a condition of his probation by committing the criminal offense(s) of simple possession of Schedule II and IV controlled substances. Thus, the evidence does not support the trial court's determination Defendant willfully violated the condition of his probation that Defendant not commit any criminal offense as alleged in the violation report(s). Therefore, the trial court abused its discretion in revoking Defendant's probation on this basis. Consequently, the trial court's Judgments revoking Defendant's probation should be reversed. Accordingly, I dissent.

## I.

¶ 32    It is important to first make clear the criminal offense(s) Defendant was alleged to have committed and what offense was not alleged. Defendant was alleged to be in simple possession of Schedule II and IV controlled substances. These offenses apparently correspond to the pill bottle containing alprazolam (Schedule IV), the oxycodone pill (Schedule II), and the clonazepam (Schedule IV) pill found in the glove box of the car. *See* N.C. Gen. Stat. § 90-90(1)(13) (listing oxycodone in Schedule II); N.C. Gen. Stat. § 90-92(a)(1)(a),(i) (listing alprazolam and clonazepam in Schedule IV). Defendant was not alleged to have been in possession of the marijuana found on

the passenger side floorboard.[1]  *See* N.C. Gen. Stat. § 90-94(1) (listing marijuana in

Schedule VI).

¶ 33        The fact Defendant was not alleged to have committed the offense of possession

of the marijuana is significant.  This is because the State hinged much of its case—if

not the majority—on the marijuana.  Indeed, after the conclusion of the evidence, the

State's argument in full heavily relied on the marijuana:

> Your Honor, I believe Corporal Faulk testified that there was
> what is believed to be marijuana in the passenger floorboard
> where Mr. Bradley was seated. Furthermore, that he was
> unsteady on his feet, and they were concerned for him such that
> they called EMS, despite the fact that he refused EMS.
>
> Additionally that there were controlled substances in the glove
> box, that while Ms. Gooch went back and forth about whether or
> not it was hers, she did implicate that some of them were the
> defendant's, and that there were -- there was marijuana
> paraphernalia also found in the vehicle.
>
> Your Honor, I think that there's sufficient evidence that the
> defendant was constructively in possession of the marijuana,
> given that it was on the floorboard in a seat where he was sitting.

The State did so despite the fact the State never alleged Defendant committed this

offense in violation of his probation.

---

[1] A critical reviewer of this case may well wonder why—if the State was going to allege
possession of anything on a "constructive possession" theory on these facts—it didn't allege
constructive possession of marijuana.

¶ 34 Compounding this confusion as to what offense or offenses Defendant was alleged to have committed, in rendering its decision, the trial court did not specifically identify what offenses it found Defendant had committed in violation of his probation, stating: "The Court finds the respondent has unlawfully, willfully and without legal justification violated the terms and conditions of his probation as is alleged in the violation reports, and the Court specifically finds that he's committed subsequent offenses." The trial court's Judgments also do not independently identify the offenses found to have been committed instead reciting violations of paragraph numbers of the violation reports. As such, there is a legitimate question on the existing record as to whether the trial court relied on a non-alleged offense of possession of marijuana, in whole or in part, to find grounds to revoke Defendant's probation. If the trial court—as a result of the State's representations—was acting under a misapprehension Defendant was alleged to have possessed the marijuana, this would constitute an abuse of discretion. At a minimum, this would require a remand to the trial court to clarify its ruling and determine whether the evidence supported a finding Defendant committed the offenses he was actually alleged to have committed.

## II.

¶ 35 Indeed, the majority opinion focuses its analysis of whether the evidence supports the trial court's Judgments revoking probation—quite correctly—only on possession of the Schedule II and IV substances. As the majority articulates:

"Possession of any item may be actual or constructive." *State v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998). The evidence here does not support a theory of actual possession of the Schedule II and IV substances by Defendant. Nobody in this case argues it does.

¶ 36        Instead, the State contends—and the majority agrees—the evidence was adequate to support a finding Defendant constructively possessed the Schedule II and IV substances. The law related to constructive possession applicable to this case was well-summarized by our prior decision in *State v. Ferguson*:

> "A person is in constructive possession of a thing when, while not having actual possession, he has the intent and capability to maintain control and dominion over that thing." *State v. Beaver*, 317 N.C. 643, 648, 346 S.E.2d 476, 480 (1986) (citing *State v. Williams*, 307 N.C. 452, 455, 298 S.E.2d 372, 374 (1983)). "Unless a defendant has exclusive possession of the place where the contraband is found, the State must show other incriminating circumstances sufficient for the jury to find a defendant had constructive possession." *State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009) (citing *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 271 (2001)). As a general rule, " 'mere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession.' " *State v. Weems*, 31 N.C. App. 569, 570, 230 S.E.2d 193, 194 (1976) (citations omitted). Accordingly, "the mere presence of the defendant in an automobile in which illicit drugs are found does not, without more, constitute sufficient proof of his possession of such drugs." *Weems*, 31 N.C. App. at 571, 230 S.E.2d at 194.

204 N.C. App. 451, 459–60, 694 S.E.2d 470, 477 (2010).

¶ 37 In this case, the evidence, without more, simply does not support a finding Defendant was in constructive possession of the Schedule II and IV substances found inside of a pill bottle inside of a glove box of a car not owned nor operated by Defendant.[2] In its analysis, the majority correctly summarizes the salient evidence offered by the State: Gooch was pulled over for suspected driving while impaired and Defendant was Gooch's passenger; Defendant was removed from the vehicle due to "a lot of excessive moving in the passenger side"; Defendant was characterized as "unsteady on his feet" and "falling in and out"; after Defendant was removed from the car, a search of the vehicle revealed a pill bottle containing Xanax, Clonazepam, and Oxycodone inside the glove box.[3] Additionally, the evidence showed the car was not registered to Defendant but rather Gooch's grandmother and there was no evidence Defendant had or exercised any ownership of the car.

¶ 38 First, the mere fact Defendant was a passenger in the car is, by itself,

---

[2] Additionally, I am not convinced there is any difference between Defendant's proffered "substantial evidence" standard and the majority's "any competent evidence standard," but to the extent there is any daylight between the two, I reach the same conclusion: there is no competent evidence to support a finding of constructive possession.

[3] I note with appreciation that the majority does not rely on the evidence of the out-of-court statements from Gooch concerning who owned the substances in the car. The State offering those out-of-court statements to prove the substances belonged, in whole or part, to Defendant constitutes inadmissible hearsay testimony. Even though Defendant did not object to these statements, we also presume the trial court did not rely on them either. *See State v. Allen*, 322 N.C. 176, 185, 367 S.E.2d 626, 631 (1988) ("The presumption in non-jury trials is that the court disregards incompetent evidence in making its decision.").

insufficient to establish constructive possession. *Id.* Second, the two additional incriminating circumstances were: (1) Defendant was removed from the car for "excessive moving" and (2) he was unsteady on his feet and appeared to be "falling in and out."

¶ 39        Here, there was no evidence Defendant's "excessive moving" had any connection to the pill bottle or was an attempt to conceal the substances. In prior cases, the suspicious or nervous behavior conduct indicated "an awareness of the drugs, such as efforts at concealment or behavior suggesting a fear of discovery." *State v. Turner*, 168 N.C. App. 152, 156, 607 S.E.2d 19, 22–23 (2005) (evidence two suspects were passing a tube later determined to contain cocaine between each other under a blanket); *see also State v. McNeil*, 359 N.C. 800, 801–02, 617 S.E.2d 271, 272–73 (2005) (defendant acted nervous, ran from police, and admitted possession of some of the drugs that police found); *State v. Butler*, 356 N.C. 141, 147–48, 567 S.E.2d 137, 141 (2002) (taxicab driver felt defendant "struggling" in the backseat behind him and pushing against the front seat, and the police found drugs under the seat 12 minutes later); *State v. Harrison*, 14 N.C. App. 450, 450–51, 188 S.E.2d 541, 542 (1972) (officer noticed the defendant moving around on the back seat and partially concealing a brown envelope with his hand). In this case, there was no evidence that Defendant's excessive moving indicated any awareness of the Schedule II or IV substances in the glove box or that he was attempting to conceal the Schedule II and IV substances.

Nor was there evidence Defendant was evasive or non-compliant with law enforcement.

¶ 40    Next, the evidence Defendant was unsteady on his feet and "falling in and out" appears to be used as circumstantial evidence that Defendant was impaired. However, there is no evidence Defendant's impairment was the result of ingesting Schedule II or IV substances. For example: there was no evidence of a blood test, no evidence Defendant's behavior was consistent with one impaired by the Schedule II and/or IV substances, or any evidence from which such impairment might be inferred. Any speculation Defendant was impaired by the Schedule II and IV substances and thus, Defendant was "in possession" of those substances is just that: speculation. *See State v. Angram*, 270 N.C. App. 82, 87, 839 S.E.2d 865, 868 (2020) ("Although circumstantial evidence may be sufficient to prove a crime, pure speculation is not, and the State's argument is based upon speculation.").

¶ 41    Thus, because the evidence of Defendant's "constructive possession" of Schedule II or IV substances is nothing more than speculative, there is no competent evidence to support a finding Defendant committed the offenses of possession of a Schedule II and Schedule IV substances. Thus, the trial court erred in finding Defendant violated conditions of his probation by committing the subsequent offenses alleged in the violation reports. Consequently, the trial court erred in entering its Judgments, revoking Defendant's probation, and activating his sentences.

Accordingly, the trial court's Judgments should be reversed.