An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-220

Filed: 6 October 2015

Rowan County, No. 13 CRS 2645, 54764

STATE OF NORTH CAROLINA,

v.

WAYNE ALLEN DAVIS, Defendant.

Appeal by defendant from judgment entered 23 April 2014 by Judge Mark E. Klass in Rowan County Superior Court. Heard in the Court of Appeals 26 August 2015.

> *Attorney General Roy Cooper, by Assistant Attorney General Nancy Dunn Hardison, for the State.*

> *Cooley Law Office, by Craig M. Cooley, for defendant-appellant.*

ZACHARY, Judge.

Wayne Davis (defendant) appeals from convictions of possession of a firearm by a felon and having the status of an habitual felon. On appeal, defendant argues that the State presented insufficient evidence that he possessed a firearm and that the trial court erred by denying his motion for a continuance. We disagree.

I. Factual and Procedural History

On 26 August 2013 defendant was indicted for one count of possession of a firearm by a convicted felon and, in a separate indictment, for being an habitual felon. At the trial on these charges, which began on 22 April 2014, the State's evidence tended to show the following:

At around midnight on the night of 6 August 2013, Officer Jennifer Moreau of the Salisbury Police Department received a "shots fired" call in which a witness reported "that two black males were chasing another black male" and were firing shots at the person being chased. One of the shooters was described as wearing a white shirt and dark pants. Shortly thereafter, Officer Moreau saw defendant, an African-American man, walking down a nearby street and wearing dark pants and a white shirt. Officer Moreau approached defendant from behind and noticed that defendant looked over his shoulder in her direction and that as defendant walked along his left arm swung freely while his right hand was "pinned toward the front" so that Officer Moreau could not see what was in defendant's hand. Officer Moreau slowed down as she passed defendant and shone her flashlight at him. As she "passed by him, [Officer Moreau] saw his right hand go around to his back and [he] pinned it there[.]" At trial, Officer Moreau demonstrated for the jury the hand movements that defendant made, which she described as "very odd." She testified that:

> Officer Moreau: I slowed down even further, keeping my eyes on him, coming to a stop, when I saw him make a sideways motion, like bending sideways, and reach his hand out towards the wall. And that's when I just locked it

up in park, and jumped out of my vehicle, and went and stopped him.

Prosecutor: Well, what -- in your training and experience, I mean, what did you believe those gestures meant to you?

Officer Moreau: He was hiding something in his hand. It could have been anything. But he was hiding something, obviously, that he didn't want a police officer to see. And then he deposited it behind the wall.

Officer Moreau stopped her patrol car and, as she approached defendant, she saw a gun lying in the grass behind the wall, "right where [she saw defendant] dip sideways." At that point Officer Moreau handcuffed defendant, called for backup assistance, and examined the area where she found the gun. She noted that although the grass was wet with dew, the gun was dry and appeared clean. The gun was loaded but had not been fired. Officer Moreau arrested defendant for possession of a firearm by a felon. Defendant told her that he did not have a gun and had been holding a cell phone, and that he had seen two men running between nearby houses. Officer Moreau noticed, however, that although her own footsteps made visible prints in the dewy grass between the houses, there were no footprints in the area indicated by defendant. The firearm was taken into evidence for testing, but no usable fingerprints were obtained from the gun. At the time of defendant's arrest, swabs were taken from the gun in order to conduct DNA tests, but the testing had not been completed at the time of trial.

The defendant's evidence, as relevant to the issues raised on appeal, tended to show the following. Defendant testified that he was 47 years old and that on 6 August 2013 he had visited his girlfriend, Ms. Fatima Gibson. Defendant left Ms. Gibson's house shortly before midnight and walked toward a gas station to buy cigarettes. When defendant heard gunshots, he changed his route. Just before Officer Moreau stopped him, defendant saw two men running away between houses on the street. Defendant denied possessing a gun, leaning towards the wall, or dropping a gun. He did not recall the grass being wet with dew, testified that he had not worn his hair in the style to which Officer Moreau testified, and maintained that he had not told Officer Moreau that he was walking between his girlfriend's house and home. Thus, defendant's testimony directly contradicted that of Officer Moreau.

Ms. Gibson testified that defendant had visited her the night of 6 August 2013 and that when he left between 11:00 and midnight to get cigarettes he did not have a gun. Elizabeth Patel, a forensic scientist with the North Carolina state crime laboratory, testified that she conducted testing on gunshot residue swabs taken from defendant and that the results were inconclusive.

On 23 April 2014 the jury returned a verdict finding defendant guilty of possession of a firearm by a convicted felon. Defendant entered a plea of guilty to having the status of an habitual felon, and was sentenced to a term of imprisonment of 88 to 118 months. Defendant gave notice of appeal in open court.

## II. Sufficiency of the Evidence

Defendant argues first that the trial court erred by denying his motion to dismiss the charge of possession of a firearm by a felon, on the grounds that the State presented insufficient evidence that he constructively possessed a firearm. We have carefully reviewed the evidence and conclude that the trial court did not err by denying defendant's motion and submitting the charge to the jury.

### A. Standard of Review

The standard of review of a trial court's ruling on a defendant's motion to dismiss is well established:

> When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines whether the State presented substantial evidence in support of each element of the charged offense. Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion. In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. The defendant's evidence, unless favorable to the State, is not to be taken into consideration, except when it is consistent with the State's evidence, the defendant's evidence may be used to explain or clarify that offered by the State. . . . [I]f there is substantial evidence - whether direct, circumstantial, or both - to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*State v. Abshire*, 363 N.C. 322, 327-28, 677 S.E.2d 444, 449 (2009) (citations and quotation marks omitted). "Whether the evidence presented at trial is substantial

evidence is a question of law for the court." *State v. Miles*, 222 N.C. App. 593, 599, 730 S.E.2d 816, 822 (2012) (citing *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 651 (1982)), *aff'd*, 366 N.C. 503, 750 S.E.2d 833 (2013). "Appellate review of a denial of a motion to dismiss for insufficient evidence is *de novo*." *State v. Boozer*, 210 N.C. App. 371, 374-75, 707 S.E.2d 756, 761 (2011) (citation omitted), *disc. review denied*, 365 N.C. 543, 720 S.E.2d 667 (2012).

## B. Discussion

N.C. Gen. Stat. § 14-415.1(a) provides, in relevant part, that "[i]t shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm[.]" Accordingly, in order to establish the crime of possession of a firearm by a felon, the State must show that the defendant was previously convicted of a felony and was thereafter in possession of a firearm. *See State v. Best*, 214 N.C. App. 39, 45, 713 S.E.2d 556, 561 (citing *State v. Wood*, 185 N.C. App. 227, 235, 647 S.E.2d 679, 686 (2007)), *disc. rev. denied*, 365 N.C. 361, 718 S.E.2d 397 (2011). In the case at bar, defendant admits being a convicted felon and thus the only issue on appeal is whether defendant possessed a firearm.

It is axiomatic that possession of an item may be actual or constructive. "Actual possession requires that a party have physical or personal custody of the item. A person has constructive possession of an item when the item is not in his physical custody, but he nonetheless has the power and intent to control its disposition." *State*

*v. Alston*, 131 N.C. App. 514, 519, 508 S.E.2d 315, 318 (1998) (citations omitted). This Court has noted that "[w]hen the defendant, 'while not having actual possession, . . . has the intent and capability to maintain control and dominion over the [property],' he has constructive possession of the item." *State v. Glasco*, 160 N.C. App. 150, 156, 585 S.E.2d 257, 262 (2003)) (quoting *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001)) (citation omitted).

It has long been held that in order to prove constructive possession of an item, " 'mere proximity . . . is usually insufficient, in the absence of other incriminating circumstances, to convict for possession.' " *State v. Ferguson*, 204 N.C. App. 451, 459-60, 694 S.E.2d 470, 477 (2010) (quoting *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976)) (citations omitted). *See, e.g., State v. Bailey*, __ N.C. App. __, __, 757 S.E.2d 491, 494 (evidence insufficient to go to the jury where defendant linked to rifle solely by "his presence in the vehicle and his knowledge that the gun was in the backseat"), *disc. review denied*, 367 N.C. 789, 766 S.E.2d 678 (2014); and *Alston*, 131 N.C. App. at 519, 508 S.E.2d at 319 (evidence insufficient to go to the jury where "both defendant and his wife [had] equal access to [the handgun]"). Such cases turn on the totality of the circumstances, and "often include evidence that the defendant had a specific or unique connection to the place where the [contraband was] found." *Ferguson*, 204 N.C. App. at 460, 694 S.E.2d at 477 (citations omitted). In addition, in many constructive possession cases, there is evidence presented that "the defendant

behaved suspiciously, made incriminating statements . . . or failed to cooperate with law enforcement officers." *Id.* (citations omitted). Moreover, there will frequently be other incriminating evidence in addition to the defendant's connection to a place or his behavior. *See, e.g., Ferguson*, 204 N.C. App. at 461, 694 S.E.2d at 478; *State v. McNeil*, 359 N.C. 800, 801, 617 S.E.2d 271, 272 (2005); *State v. Wiggins*, 185 N.C. App. 376, 388, 648 S.E.2d 865, 873 (2011); and *State v. Martinez*, 150 N.C. App. 364, 371, 562 S.E.2d 914, 918 (2002).

In the case before the Court, defendant asserts that he had no "specific or unique connection" to the place where the gun was found. At trial, however, the State offered evidence that defendant behaved in a suspicious manner and presented other evidence tending to corroborate the defendant's possession of the gun.

The trial court did not instruct the jury on the distinction between actual and constructive possession, although it did inform the jurors that they could consider evidence that the gun was found in close proximity to defendant in their determination of whether defendant was aware of the gun and had the power or intent to control its use. Defendant neither objected to the trial court's instructions at trial, nor raised it as an issue on appeal; consequently, we express no opinion on the significance, if any, of the trial court's failure to instruct on the difference between actual and constructive possession. Upon review of the evidence offered in this case, we hold that the State presented sufficient evidence to allow a reasonable juror to

find either that defendant was in actual or constructive possession of the gun

retrieved by Officer Moreau.  Specifically, the State offered evidence of the following:

> 1.  When Officer Moreau observed defendant, she was driving behind him and noticed that he kept his right hand pinned to his front so that she could not see what he was holding, and that he looked over his shoulder in her direction.  As Officer Moreau drove past defendant, she shone her flashlight back in his direction, at which point defendant moved his right arm behind his back.
>
> 2.  When Officer Moreau slowed her patrol car, she observed defendant bend to one side and reach out his arm.
>
> 3.  When Officer Moreau stopped her car and approached defendant, she saw a gun lying in the grass at the spot where defendant had reached out his arm.
>
> 4.  The grass around the firearm was wet with dew, but the gun was dry and clean.
>
> 5.  Officer Moreau did not lose sight of defendant between the time she first noticed him and her discovery a few moments later of a gun in the same place where defendant had bent to the side and stretched out his arm.

This evidence is more than adequate to allow a reasonable juror to find that

defendant's arm movements were intended to keep the contents of his right hand

from Officer Moreau's view.  When it appeared that Officer Moreau was stopping her

patrol car, defendant bent to the side and dropped what he was holding; Officer

Moreau found a gun exactly where defendant had bent to the side and stretched his

arm; and the condition of the gun was consistent with its having been placed there

very recently.  On this basis a reasonable juror could conclude either that defendant

had been in actual possession of a firearm which he dropped on the ground just before Officer Moreau retrieved it, or that defendant had retained constructive possession of the gun after discarding it.

In urging us to reach a contrary result, defendant directs our attention to weaknesses in the State's evidence. For example, defendant argues that defendant did not have "exclusive control" of the yard where the gun was found and that the State "did not present evidence [that] the firearm was not behind the wall before [defendant] walked [by.]" Weaknesses in the evidence go to its weight and, as discussed above, our review is confined to a determination of whether the State presented substantial evidence to support the elements of the charged offense:

> A 'substantial evidence' inquiry examines the sufficiency of the evidence presented but not its weight. The reviewing court considers all evidence in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence. Evidentiary "contradictions and discrepancies are for the jury to resolve and do not warrant dismissal." Finally, sufficiency review "is the same whether the evidence is circumstantial or direct, or both."

*State v. Garcia*, 358 N.C. 382, 412-13, 597 S.E.2d 724, 746 (2004) (citing *State v. Squires*, 357 N.C. 529, 535, 591 S.E.2d 837, 841 (2003), and quoting *State v. Gibson*, 342 N.C. 142, 150, 463 S.E.2d 193, 199 (1995), and *State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981)) (other citation omitted).

Moreover, our review of the evidence suggests that the central issue for the jury's determination was the relative credibility of defendant and Officer Moreau, and

that the points raised by defendant are relevant primarily insofar as they might impact a credibility analysis. It is undisputed that Officer Moreau retrieved a gun in a yard on the street where defendant was walking. Officer Moreau testified that, seconds before finding the gun, she saw defendant lean towards the spot where it was found and reach out his arm. On the other hand, defendant testified that he did not have a gun on 6 August 2013 and that he did not bend sideways and reach out his arm at the spot where Officer Moreau found a gun. If the jury believed defendant, it would acquit him of the charge. If the jury found Officer Moreau's testimony to be credible it would likely convict defendant. As a result, the jury's determination of the credibility of the witnesses was crucial to its decision, and it is axiomatic that the " 'question of whether a witness is telling the truth is a question of credibility and is a matter for the jury alone.' " *State v. Chapman*, 359 N.C. 328, 363, 611 S.E.2d 794, 820-21 (2005) (quoting *State v. Solomon*, 340 N.C. 212, 221, 456 S.E.2d 778, 784 (1995)).

Defendant does not cite cases addressing a similar factual setting in which an appellate court held that there was insufficient evidence of possession, and we note that our holding is supported by other cases. In *State v. Dawkins*, 196 N.C. App. 719, 725, 675 S.E.2d 402, 406 (2009), in which the defendant challenged his conviction for possession of a firearm by a felon, we held that the evidence was sufficient:

> Deputy Scott testified that as defendant exited the vehicle, he saw an object fall from defendant's person. A loaded,

five-shot .357 revolver was recovered at the place where Deputy Scott saw the object fall. From this evidence, the jury could infer that defendant had the .357 in his possession just prior to exiting the vehicle.

Accordingly, we conclude that this argument lacks merit.

### III. Denial of Defendant's Motion for a Continuance

Defendant also argues that the trial court erred by denying his motion for a continuance, made at the start of trial. Defendant contends that the trial court's denial of his continuance motion violated his right under the North Carolina and United States Constitutions to present a complete defense. Defendant has not preserved the constitutional issue for appellate review or demonstrated a right to relief on a non-constitutional basis.

At trial defendant made an oral motion for a continuance. Defense counsel informed the court that the night before he "became aware that there were DNA swabs taken from [defendant]" and asked the court to delay defendant's trial until the results could be obtained. Defendant did not mention the North Carolina or United States Constitutions, or make any argument regarding his constitutional rights.

> "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." Constitutional issues, which are not raised and ruled upon at trial, will not be considered for the first time on appeal. . . . Nowhere in his motion to continue did defendant

contend that his constitutional rights were violated or implicated. Pursuant to our Rules of Appellate Procedure, defendant has not preserved the issue of whether the denial of his motion to continue violated his constitutional rights.

*State v. Ellis*, 205 N.C. App. 650, 654, 696 S.E.2d 536, 539 (2010) (quoting N.C.R. App. P. 10(a)(1)) (other citation omitted).

On appeal, defendant contends that "if the denial [of a defendant's motion for continuance] impairs a defendant's constitutional rights, the motion presents a legal question fully reviewable under *de novo* review[,]" citing *State v. Taylor*, 354 N.C. 28, 550 S.E.2d 141 (2001), for this proposition. However, *Taylor* does <u>not</u> hold that the denial of a continuance motion is "fully reviewable" whenever a defendant argues that the denial "impaired" his constitutional rights, but instead states that:

> Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review. When a motion to continue <u>raises</u> a constitutional issue, the trial court's ruling is fully reviewable upon appeal. Even if the motion <u>raises</u> a constitutional issue, a denial of a motion to continue is grounds for a new trial only when defendant shows both that the denial was erroneous and that he suffered prejudice as a result of the error.

*Taylor*, 354 N.C. at 33-34, 550 S.E.2d at 146 (2001) (emphasis added) (citing *State v. Branch*, 306 N.C. 101, 104, 291 S.E.2d 653, 656 (1982)) (other citation omitted). Thus, *Taylor* does not represent an exception to the long-established rule that "failure to raise a constitutional issue at trial generally waives that issue for appeal[.]" *State v.*

*Wilson*, 363 N.C. 478, 484, 681 S.E.2d 325, 330 (2009) (citing *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985)). In his appellate brief, defendant does not acknowledge his failure to preserve this issue for our review or present any argument regarding his failure to raise the constitutional issue before the trial court. We conclude that defendant is not entitled to appellate review of whether the trial court's denial of his motion for a continuance violated his constitutional rights.

Nor has defendant shown any grounds for relief on the basis of non-constitutional error. As discussed above, "[i]n most circumstances, a motion to continue is addressed to the sound discretion of the trial court, and absent a manifest abuse of that discretion, the trial court's ruling is not reviewable." *State v. Rogers*, 352 N.C. 119, 124, 529 S.E.2d 671, 674-75 (2000). Defendant does not argue that the trial court abused its discretion. In addition, "generally, the denial of a motion to continue, whether a constitutional issue is raised or not, is sufficient grounds for the granting of a new trial only when the defendant is able to show that the denial was erroneous and that he suffered prejudice as a result of the error." *Id.* In this case, defendant has failed to establish either error or prejudice.

We first observe that his continuance motion was not timely. N.C. Gen. Stat. § 15A-952(b) provides that a motion to continue "must be made within the time limitations stated in subsection (c) unless the court permits filing at a later time[.]" N.C. Gen. Stat. § 15A-952(c) in turn mandates that:

(c) Unless otherwise provided, the motions listed in subsection (b) must be made at or before the time of arraignment if a written request is filed for arraignment and if arraignment is held prior to the session of court for which the trial is calendared.  If arraignment is to be held at the session for which trial is calendared, the motions must be filed on or before five o'clock P.M. on the Wednesday prior to the session when trial of the case begins.

If a written request for arraignment is not filed, then any motion listed in subsection (b) of this section must be filed not later than 21 days from the date of the return of the bill of indictment as a true bill.

Defendant's motion, made at the start of trial, was not timely under any of the factual circumstances set out in N.C. Gen. Stat. § 15A- 952(c).  "By waiting until the session for which his trial was calendared and then making an oral motion to continue, defendant failed to comply with these statutes. Defendant's failure to make a timely motion was in itself sufficient basis for its denial." *State v. Evans*, 40 N.C. App. 390, 391, 253 S.E.2d 35, 36 (1979).  In addition, defendant did not contradict the prosecutor's assertion that waiting for the results of DNA testing would likely delay the trial by at least a year and defendant did not indicate that he had contacted the lab for information on the timeline for testing.

Regarding the existence of prejudice, under N.C. Gen. Stat. § 15A-1443(a):

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the

> appeal arises. The burden of showing such prejudice under
> this subsection is upon the defendant. . . .

Defendant has argued that the results of DNA tests would have been relevant, admissible, and potentially helpful to his defense. Defendant, however, has not presented any argument that there is a "reasonable possibility" that the result of his trial would have been different if the results had been available. This argument lacks merit.

We hold that defendant had a fair trial, free of reversible error.

NO ERROR.

Judges STEPHENS and McCULLOUGH _____.

Report per Rule 30(e).